COMMONWEALTH *vs.* THOMAS M. FRANK.

Middlesex. March 2, 1970. — April 10, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Identification.*

At the trial of an indictment for armed robbery from a hitchhiking student one night during the ten to fifteen minutes in which he rode in the front seat of an automobile between two of the robbers for more than five miles over well lighted streets, the admission of the victim's in-court identification of the defendant as one of the robbers was not erroneous on the ground that such identification was not independent of the victim's identification of the defendant at a court house approximately a month after the robbery when he was without counsel and in handcuffs, where careful findings by the judge following a voir dire and supported by the evidence warranted his conclusions that the victim's in-court identification was not based on or derived from his observation of the defendant at the court house but had an independent source in the events of the robbery itself.

INDICTMENT found and returned in the Superior Court on August 9, 1968.

The case was tried before *Moynihan*, J.

*Stephen Axelrad* (*Reuben Goodman* with him) for the defendant.

*Frank A. Marciello, Jr.*, Assistant District Attorney, for the Commonwealth.

REARDON, J. The sole issue in this appeal deals with the admission by the trial judge in evidence of an in-court identi-

fication of the defendant, Thomas M. Frank, who was tried in company with Lester Frank (separately indicted) for armed robbery. That issue and the facts are best set forth by reference to the trial judge's findings of fact on the defendant's and Lester Frank's motion to suppress evidence of their identification which were made following a voir dire. They are set forth in full as follows.

"The defendants are charged in these indictments with armed robbery on March 20, 1968, of one Larry Pasqueli. In the course of the trial of these two indictments the defendants objected to the introduction in evidence that the victim of alleged robbery, Mr. Pasqueli, had identified the two defendants at the Court House of the Newton District Court sometime in May, 1968. The defendants neglected to file a pretrial motion to suppress this evidence. Upon objections being made to the introduction of the evidence, I suspended the trial before the jury and proceeded to hold a voir dire. As a result of this hearing I find the following facts:

"At approximately midnight on March 20, 1968, Larry Pasqueli, while hitchhiking at the intersection of Memorial Drive and the Harvard Bridge in Cambridge, was offered a ride in an automobile that contained three men. Pasqueli got into the car and was seated in the front seat between the driver and a man on the passenger's seat of the front seat immediately to his right. The car proceeded across Harvard Bridge onto Massachusetts Avenue in Boston. It drove through the intersection of Massachusetts Avenue and Beacon Street and came to the intersection of Massachusetts Avenue and Commonwealth Avenue. There were street lights along the entire route taken by the automobile. The car turned right onto Commonwealth and proceeded in the direction of Kenmore Square. There are street lights on Commonwealth Avenue. The car stopped for a red light at Kenmore Square. The area of Kenmore Square is well lighted and Pasqueli had an opportunity to see the faces of both men seated with him in the front seat. The car then proceeded along Brookline Avenue and then onto Route 9.

The car proceeded along Route 9 through the Chestnut Hill
Shopping Center, another relatively well-lighted area, and
then turned right onto Hammond Pond Parkway. During
the course of the ride Pasqueli was forced at gunpoint to
surrender his wallet to the occupants in the car. On the
Hammond Pond Parkway in Newton he was ordered out
of the car and then the car with its occupants took off.

"I find that during the course of this ride, which took
approximately ten to fifteen minutes and covered a distance
of more than five miles, Pasqueli had ample opportunity to
see and to observe the faces and the general appearance of
the two men seated in the front seat of the automobile.
Pasqueli is a student at Massachusetts Institute of Tech-
nology and is above average in intelligence.

"Approximately a month after the robbery, Pasqueli was
requested by the Newton Police to come to the Court House
of the Newton District Court for the purpose of looking at
two men who according to the police had been apprehended
in the commission of a robbery similar to the robbery of
which Pasqueli was a victim. In response to this telephone
call, Pasqueli went to the Newton District Court and inside
the main entrance or lobby of the building, at the request
of a Newton Police Officer, he took a seat and observed
people walking through the lobby and going back and forth.
Fifteen to twenty people went through the lobby during the
five minutes or so that Pasqueli was seated therein. While
he was seated the two defendants in this case were brought
in, were conducted through the lobby in handcuffs by police
or custodial officers in plain clothes and led into the court-
room or other room off the lobby. Pasqueli identified the
two defendants as two of the men who participated in the
robbery the month previously. At the time Pasqueli was
making this identification, the defendants were not repre-
sented by counsel and no attorney of theirs was present in
the lobby at the time of the identification, and there is no
evidence that any attorney of theirs had any knowledge
that any identification was planned or was taking place.
I, therefore, rule as a matter of law that evidence as to the

identification of the defendants at the Court House in Newton is not admissible in evidence because of the lack of representation of counsel for the defendants at the confrontation of the defendants and Pasqueli.

"I find, however, that any testimony by Pasqueli from the witness stand at this trial relating to identification in Court of the two defendants as two of the participants in the robbery perpetrated on him on March 20, 1968 is based on Pasqueli's observation of the defendants on the night of the robbery while he was in the motor vehicle with them and not upon his observation of them at the Newton District Court confrontation. I find that Pasqueli had ample opportunity to observe the participants in the robbery and that he did in fact observe them at the time of the robbery. I find his present in-Court identification of them is not based upon his seeing them in the Newton District Court in May, 1968. I further find that his present in-Court identification of the two defendants is not derived from the Newton District Court observation, but has an independent source, namely, the events of the night of the robbery itself.

"I, therefore, deny the defendants' motion to suppress insofar as it relates to the in-Court identification of the two defendants as participants in the robbery of Pasqueli."

It is the contention of the defendant that the in-court identification was not independent of the identification made of him at the Newton court house in the circumstances described in the judge's findings. Once again, therefore, we are referred to *United States* v. *Wade,* 388 U. S. 218. This leads us to comment on the current and understandable number of matters which have reached us in recent months arising under the *Wade* case or under *Gilbert* v. *California,* 388 U. S. 263, or under *Stovall* v. *Denno, Warden,* 388 U. S. 293. These cases were first discussed by us in *Commonwealth* v. *Bumpus,* 354 Mass. 494, and again treated at length in *Commonwealth* v. *Cooper,* 356 Mass. 74, where the difficulties of applying the doctrine of the *Wade* case were given thorough treatment. See *Commonwealth* v. *Robinson,* 355 Mass. 620. It does not appear to us that

any good purpose would be served by further distillation of the *Wade* essence. We note that during the sitting at which this matter was heard on appeal there was a not inconsiderable number of appeals raising similar contentions on the part of defendants where in-court identifications were permitted over objection. The principal purpose of these observations and the main reason for the full inclusion in this opinion of the judge's findings of fact on the motion to suppress are to make it clear that such careful findings supported by the evidence and upholding an in-court identification are not likely to be disturbed by us. Here, an initial confrontation has occurred under circumstances likely to fix in the mind of the witness the identity of the person confronted. Upon a subsequent and definite in-court identification of the same person, such in-court identification is not rendered inadmissible by an intervening illegal pre-trial confrontation and identification. See *Chapman* v. *California*, 386 U. S. 18. Effective and constitutionally adequate administration of criminal justice does not require us in the face of such findings to second guess the trial judge who is certainly in a far better position than we to determine the facts upon which a ruling on the admissibility of an in-court identification is based. This holding is in no sense to be interpreted to mean that requisite care is not to be exercised in prearrest or postarrest, and police station and other pre-trial, confrontations, all of which under the *Wade* case may in certain circumstances produce a taint attaching to in-court identifications. There was no error.

*Judgment affirmed.*